# MONTZ v. DISTRICT OF COLUMBIA.

---

POLICE REGULATIONS, REASONABLENESS OF; LICENSED VENDORS.

1. It is incumbent upon one who questions the validity of a police regulation upon the ground that it is unreasonable, to so show; and this cannot be done by giving to the regulation an unreasonable or forced construction, or by showing that similar regulations elsewhere are somewhat different in their provisions.

2. The police regulation promulgated by the Commissioners of this District under Sec. 3 of the act of Congress of January 26, 1887, prohibiting a licensed vendor from occupying a stand upon or in certain places, except upon duly designated places, for a longer period than may be necessary to make a sale after having been approached or stopped for that purpose, and from plying his trade or soliciting custom upon or in any such places except during prescribed hours, or at any time so as to interfere with traffic or to the annoyance of residents or passers-by, is not unreasonable but is a valid regulation; *distinguishing* Stephens v. District of Columbia, 15 App. D. C. 279.

3. Such regulation is not unreasonable because it fails to fix definitely the length of time a vendor may occupy one place without violating its provisions; it does not repose any arbitrary discretion in the police charged with its execution; and, by a proper construction of it, a vendor is not prohibited from stopping for any pur-

---

pose whatever, unless first approached or stopped by some one who, has formed a purpose of buying from him.

No. 1237. Submitted November 4, 1902. Decided December 2, 1902.

In ERROR to the police court of the District of Columbia.
*Judgment affirmed.*

The COURT in the opinion stated the case as follows:

This cause comes here from the police court of the District upon writ of error, and involves the validity of one of the police regulations of the District.

Section 3 of the act of Congress of January, 26, 1887, entitled "An act to authorize the Commissioners of the District of Columbia to make police regulations for the government of said District" (24 Stat. 368), provides that the Commissioners of the District shall have power to make regulations " to locate the places where licensed vendors on streets and public places shall stand, and change them as often as the public interests require, and to make all the necessary regulations governing their conduct upon the streets in relation to such business." And section 10 of the same act provides that the commissioners shall also have power " to regulate the movements of vehicles on the public streets and avenues for the preservation of order and protection of life and limb."

Under this authority so conferred upon them the Commissioners in 1899 promulgated the following regulation:

" No licensed vendor shall occupy a stand upon or in any of the places mentioned in Section 1 of Article VIII (of the Police Regulations), except on duly designated places, nor shall any such vendor ply his trade or solicit custom upon or in any such places between the hours of ten o'clock, P. M., and seven o'clock, A. M., nor at any time to the interference with traffic; nor shall he in any such places as aforesaid, except on duly designated places, stand for a longer period than may be necessary to make a sale, nor to the annoyance of residents of the District or passers-by."

This regulation stood for about three years, after which, in the present year 1902, it was superseded by that which is now in force, and which is in the following terms:

" No licensed vendor shall occupy a stand upon or in any of the places hereinafter mentioned in Section 1 of Article VIII (of the Police Regulations), except upon duly designated places, for a longer period than may be necessary to make a sale after having been approached or stopped for that purpose; nor shall any such vendor ply his trade or solicit custom upon or in any such places between the hours of ten o'clock, P. M., and seven o'clock, A. M., nor at any time so as to interfere with traffic, nor to the annoyance of residents or passers-by."

The appellant was charged in the police court with a violation of this regulation, in that, on June 21, 1902, being a licensed vendor, he stopped his push-cart on Pennsylvania avenue for a longer period than was necessary to make a sale, not having been approached and stopped for the purpose, and thereby hindered and delayed the passage of other vehicles. The testimony in support of the charge, as taken from the bill of exceptions, is to the effect — " that the defendant, who is a licensed vendor, stopped with his push-cart of bananas on the south side of Pennsylvania avenue, near the curb line, between Seventh street and Louisiana avenue, on June 21, 1902, for a longer period than was necessary to make a sale, not having been approached or stopped for that purpose, although he made several sales before moving on; that there was no obstruction of the free passage of said avenue other than the fact of the push-cart stopping longer than was necessary to make a sale, and that the push-cart did not hinder and delay the passage of other vehicles beyond the fact that it stopped near the curb longer than necessary to make a sale, as there was ample room to pass the said cart on said avenue."

Whether this was all the testimony in the case does not appear from the record; the bill of exceptions does not purport so to state, and counsel for the appellee avail themselves of this omission so far as to urge that, in the absence of such

a statement, the bill of exceptions does not show reversible error.

Four instructions were asked on behalf of the defendant in the cause: (1) That the defendant was not guilty of the charge; (2) That so much of the regulation as provided that no licensed vendor should stop upon any street or avenue of the city of Washington for a longer period than should be necessary to make a sale, after having been approached or stopped for that purpose, should be held to be unreasonable, unjust, unconstitutional, null and void, and, therefore, the defendant should be acquitted; (3) That the mere stopping by the defendant with his push-cart on Pennsylvania avenue northwest, for a longer period than was necessary to make a sale, without any testimony tending to show that his act of stopping obstructed the street or hindered the passage of vehicles thereon, would not render him guilty of the charge against him; (4) That the mere stopping of the defendant with his push-cart on Pennsylvania avenue, although not approached or stopped for the purpose of making a sale, without any testimony tending to show that his act of stopping did actually obstruct the passage of the avenue, would not render him guilty, and he should, therefore, be acquitted.

These instructions were rejected, and the defendant was found guilty and sentenced to pay a fine of ten dollars. From this judgment he has appealed.

It may be added that, prior to the trial and before the defendant interposed the plea of "not guilty," a motion was filed on his behalf to quash the information against him, based upon the alleged invalidity of the police regulation in question. This motion to quash was overruled. This it is unnecessary for us to notice, since the same questions are raised by the instructions requested at the trial and refused.

*Mr. Jesse E. Potbury* and *Mr. William H. Sholes* for the plaintiff in error.

*Mr. Andrew B. Duvall,* Corporation Counsel, and *Mr. E. H. Thomas,* Assistant, for the defendant in error.

Mr. Justice MORRIS delivered the opinion of the Court:

We fail to find any question of constitutionality or unconstitutionality in this case; and none has been pointed out to us either in brief or argument, notwithstanding that the instructions requested by the defendant in the police court allege such unconstitutionality. There is no constitutional or other fundamental right of any kind in the defendant to use the streets of the city of Washington as a place for the sale of his wares. The streets were not intended for any such purpose, except in the most incidental way. It certainly was not intended to give the appellant and others similarly situated the right to convert the streets into a market house or bazaar for the sale of merchandise, when the citizens generally, who desire to enter into the business of the bargain and sale of such merchandise, are required to provide their own premises at their own expense for the purpose. Instead of his being deprived of any natural or constitutional right by a restriction of his occupation of the street for the purpose of barter and sale, it would be competent by law to exclude him wholly from the use of the street for any such purpose. In our opinion, the only question in the case is that of reasonableness of the regulation, not that of constitutionality.

Undoubtedly all municipal regulations should be reasonable, in order to be valid; and unreasonable regulations will not be upheld. But upon him who questions the validity of a regulation it is incumbent to show that it is unreasonable; and this cannot be done by giving to the regulation an unreasonable or forced construction, or by a showing that similar regulations elsewhere are somewhat different in their provisions. It seems to be conceded that some regulation is necessary or proper; and when the act of Congress, within the scope of its legitimate authority, empowers the Commissioners to enact such regulation, it should be made very clear by him who would avoid the effect of it, that the action of the municipal authorities is harsh and oppressive, or in some way tends to work injustice.

As we understand the argument on behalf of the plaintiff in error, it is claimed that the regulation in question is unreasonable — *first,* on account of its vagueness and want of precision in fixing definitely and with exactness the length of time for which a vendor may stop without violation of the requirement of the ordinance; and, *secondly,* because it undertakes to prohibit a vendor from stopping for any purpose whatever, unless he is approached and stopped by some one who has formed a purpose to buy from him, without reference to any interference with traffic or annoyance to passers-by.

In support of the first proposition the ordinances of the cities of New York and Boston are cited, in the former of which licensed vendors on the public streets are prohibited from stopping more than thirty minutes at one time on any one block; and in the second of which the permission seems to be for twenty minutes. It is argued that with us also the time should be specifically limited, and not left to the discretion of a police officer, which may be more or less arbitrary. Nor, as it is argued, should it be left to a police officer to determine whether a vendor has been approached for the purpose of sale or to determine at all what the purpose is for which he has been approached.

It is not entirely apparent to us that the purpose, for which regulations of the nature of that here in question have been enacted, could best be subserved by fixing a definite time for the occupation of any one place, or whether it would not be best to limit the time of occupation, as this regulation seeks to do, by the duration of a transaction of the nature of those for which the occupation is authorized. It is not apparent that the one is any more arbitrary than the other; and on principle, it would seem to be more reasonable not to molest the vendor in his occupation as long as he is·engaged in a *bona fide* transaction, than to compel him to move on at the conclusion of an arbitrarily selected period of time, regardless of the fact of the completeness or incompleteness of the transaction. It may be that in some cities the one plan may be more expedient, while in others the alternative arrange-

ment may conduce to better results. The failure, therefore, of the regulation to fix a definite limitation of time cannot be regarded as rendering the regulation unreasonable.

Nor, as we understand it, is there any arbitrary discretion reposed by the regulation in the police officer who is charged with its execution. It is not for him to determine the length of time necessary for the making of a sale, or the purpose for which the vendor is approached; and the regulation does not seek to repose any such discretion in him. The regulation must be understood in a reasonable sense. *Prima facie* any person who approaches a licensed vendor in the street, may be presumed to do so for the purpose of purchase from him, and the circumstances of purchase and sale in such cases are so well known and recognized by the community that there is neither opportunity nor occasion for the police to interpret the law. Of course, in a certain sense, there is always more or less discretion reposed in the police for the execution and enforcement of the law; but the law cannot be held unreasonable because the ordinary custodians of the public peace are required to act in all cases with judgment and discretion.

The case relied on by the plaintiff in error in support of the contention, that of *In re Frazee,* 63 Mich. 407, does not seem to us to be apposite. There was a municipal or police regulation involved in that case, whereby the arbitrary discretion was left to the police to permit or restrict the movement of processions on the public streets, which, of course, is a discretion that should not be so reposed. The case would be appropriate here if the regulation now in question gave authority to the police to determine how long and on what streets of the city they would permit a licensed vendor to stop for the sale of his wares.

Then, in the second place, it is argued that the regulation is unreasonable because it undertakes to prohibit a licensed vendor to stop for any purpose whatever, unless he is first approached or stopped by some one who has formed a purpose of buying from him. But this construction of the regulation seems to us to be constrained and unnatural. As we have stated, any person who approaches a licensed vendor in

the street may be presumed to do so for the purpose of buying from him; and such presumption will stand until some different purpose is shown. Nor does the regulation read so as to prohibit any stopping in the street for any other purpose. The provision is that " no licensed vendor *shall occupy a stand* * * * for a longer period than may be necessary to make a sale." Now to *" occupy a stand "* in the public street is plainly a very different thing from stopping in the street. Any person driving or walking, or going over the public street, may have occasion to stop therein, and he may lawfully do so as long as he does not hinder or impede traffic thereon or the proper use of the street by other persons; but to occupy a stand in the street we all know to be a very different thing, and a thing which it is eminently proper to regulate by municipal ordinance.

We may also add that the construction of the regulation which would prohibit the licensed vendor from making more than one sale before moving on, is also, in our opinion, not warranted by anything that is contained in the regulation itself, and is not required either by its letter or its spirit, or by the exigencies of the conditions which dictated the enactment of the regulation.

The case of *Stephens* v. *District of Columbia,* 16 App. D. C. 279, in this court, is cited on behalf of the appellant to show that he should not be held in this case, inasmuch as there was no proof in the case that he obstructed the street. But we cannot regard the case of Stephens as applicable here. Even if we assume what the record fails to show, that the testimony recited in the bill of exceptions was all the testimony that was adduced, yet it was not necessary in this case to show an actual obstruction of the street. The occupation of a stand upon the public street is to that extent of itself an obstruction of the street; and, unless it is done according to law, and under the terms and conditions prescribed by the law, it is in itself an offense which may be punished by municipal ordinance. The obstruction of the free passage of the street, and thereby the hindrance and delay of other vehicles, is the natural and necessary consequence of the occu-

pation of the street otherwise than in accordance with law; and such unlawful occupation is in itself an obstruction and a hindrance and an interference with traffic, in contemplation of law, even though there were no other vehicle and no other person on the street to be affected by the obstruction. The law does not require that some one should be actually hindered and delayed before an obstruction on the street can be regarded as an offense against municipal ordinance. On the contrary, the law in such cases is the law of precaution.

In the case of Stephens the information was for stopping and loitering in the street. In the testimony it was shown that he did not stop at all, and therefore could not have loitered; but that he drove slowly in the street. It was held that he could not by this testimony be convicted of the offense of obstructing the street by stopping and loitering. There was no question of the validity of the municipal ordinance, but only of its construction and application.

We find no error in the record of this cause, which, therefore, will be remanded to the police court of the District of Columbia for the execution of its judgment therein. The judgment will be *affirmed, with costs. And it is so ordered.*